UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

SANGITA PATEL, M.D.

Defendant.
_____/

Case: 1:23-cr-20099
Judge: Ludington, Thomas L.
MJ: Morris, Patricia T.
Filed: 02-15-2023 At 12:50 PM
INDI USA v PATEL (sk)

VIO: 18 U.S.C. § 1347

18 U.S.C. § 982

## INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare was divided into four parts and covered specific benefits, items, and services: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).

4. Specifically, Medicare Part B covered medically necessary physician office services and outpatient care that were ordered by licensed medical doctors or other qualified health care providers.

5. Physicians, clinics, laboratories, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries.

6. To receive Medicare reimbursement, providers had to fill out an application and execute a written provider agreement, known as CMS Form 855. The application contained certifications that the provider agreed to abide by Medicare laws and regulations, and that the provider "[would] not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [would] not submit claims with deliberate ignorance or reckless disregard of their

truth or falsity." Medicare providers were given access to Medicare manuals and service bulletins describing procedures, rules, and regulations.

7. Providers submitted claims to Medicare and Medicaid, and using billing codes, also called Current Procedural Terminology (CPT) codes. The codes were a systematic listing, or universal language, used to describe the procedures and services performed by health care providers. Health care benefit programs, including Medicare, Medicaid and BCBSM, used these codes to understand and evaluate the claims submitted by providers and to decide whether to issue or deny payment. Each health care benefit program established a fee or reimbursement level for each service described by a CPT code.

8. CMS contracted with various companies to receive, adjudicate, process, and pay Part B claims. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B in the state of Michigan. AdvanceMed (now known as "CoventBridge Group") was the Zone Program Integrity Contractor for the state of Michigan, and as such, it was the Medicare contractor charged with investigating fraud, waste, and abuse.

## Telemedicine

9. Telemedicine provided a means of connecting patients to doctors and other health care providers by using telecommunications technology to interact with a patient.

10. Medicare Part B covered expenses for specified telemedicine services if certain requirements were met. These requirements included, but were not limited to, that: (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via a two-way, real-time interactive audio and video telecommunications system; and (c) the beneficiary was at a practitioner's office or a specified medical facility – not at a beneficiary's home – during the telemedicine consultation with a remote practitioner.

11. In or around March 2020, in response to the COVID-19 pandemic, some of the requirements for telemedicine services were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area, and even if the telehealth services were furnished to beneficiaries in their home.

**The Defendant**

12. Defendant SANGITA PATEL, M.D., a resident of Oakland County was a physician licensed to practice in Michigan. SANGITA PATEL was a Medicare provider and was required to abide by all Medicare rules and regulations.

**Related Entity and Individuals**

13. Advance Medical Home Physicians ("ADVANCE"), was a Michigan company operated as a medical clinic that purportedly provided telehealth medical visits.

14. INDIVIDUAL-1, a resident of Tuscola County, Michigan, lacked any credentials to practice medicine in the State of Michigan. SANGITA PATEL employed INDIVIDUAL-1 to contact patients by telephone and to submit or cause the submission of claims to Medicare.

## COUNT 1
## 18 U.S.C. § 1347
## (Health Care Fraud)

15. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

16. From in or around April 2020, and continuing through in or around February 2023, the exact dates being unknown to the Grand Jury, in Tuscola County and Oakland County, in the Eastern District of Michigan, and elsewhere, the defendant, PATEL, in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare and other health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section

24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of, and payment for, health care benefits, items, and services.

### Purpose of the Scheme and Artifice

17. It was a purpose of the scheme and artifice for SANGITA PATEL, and her accomplices, to unlawfully enrich themselves by: (a) submitting and causing the submission of false and fraudulent claims to Medicare that were (i) not eligible for Medicare reimbursement, and (ii) not provided as represented; (b) concealing the submission of false and fraudulent claims and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit.

### The Scheme and Artifice

18. On or about September 23, 2019, SANGITA PATEL certified to Medicare that she would comply with all Medicare rules and regulations. For all times during the charged period, SANGITA PATEL was a Medicare provider and was required to abide by all Medicare rules and regulations and federal laws, including that she would not knowingly present or cause to be presented a false and fraudulent claim for payment by Medicare.

19. Thereafter, SANGITA PATEL devised and engaged in a scheme to submit false and fraudulent claims to Medicare for: (a) telehealth visits not performed with the required interactive audio and video telecommunications system that permits real-time communication between the authorized Medicare provider and the beneficiary; and (b) telehealth visits that were not eligible for reimbursement.

20. With PATEL's approval, Individual-1 contacted Medicare beneficiaries by telephone to take information from beneficiaries about their pain levels and vital signs. The patients did not receive a telehealth visit with interactive audio and video with PATEL. With PATEL'S direction and approval, Individual-1 submitted false and fraudulent claims for telehealth visits that were not rendered and did not meet Medicare criteria for such visits.

21. PATEL used documents known as "Superbills" to submit claims to Medicare. The information contained within a Superbill varies, but at a minimum typically includes information to identify the patient, the date of service, and the procedures which were performed. PATEL provided pre-signed Superbills to Individual-1, who used the superbills to submit claims to Medicare for purported telehealth visits that were not, in fact, rendered.

22. Specifically, PATEL: (a) falsely stated that she determined, through her assessment of the Medicare beneficiary, that a particular course of treatment, was appropriate and medically necessary; (b) falsely attested that she was treating the

Medicare beneficiary; and (c) concealed the fact she did not communicate with the beneficiaries in the manner required by Medicare for telehealth visits.

23. From in or April 2020, through in or around February 2023, PATEL and others submitted and caused the submission of more than $1,018,324 in false and fraudulent claims to Medicare for visits that were not provided as represented. Medicare paid more than $448,000 on these claims.

All in violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATIONS
### Criminal Forfeiture
### (18 U.S.C. § 982(a)(7))

24. The allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

25. Upon conviction of the violations alleged in Count 1 as set forth in this Indictment, the defendant, SANGITA PATEL, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

26. Substitute Assets: If the property described above as being subject to forfeiture, because of any act or omission of the defendant:

    a. Cannot be located upon the exercise of due diligence;

    b. Has been transferred or sold to, or deposited with, a third party;

    c. Has been placed beyond the jurisdiction of the Court;

    d. Has been substantially diminished in value; or

    e. Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek to forfeit any other property of the defendant, SANGITA PATEL, up to the value of the forfeitable property described above.

27. Money Judgment: The government shall also seek a forfeiture money judgment from the defendant for a sum of money representing the total amount of property subject to forfeiture because of defendant's violations of 18 U.S.C. § 1347, as alleged in this Indictment.

THIS IS A TRUE BILL.

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON

DAWN N. ISON
UNITED STATES ATTORNEY

REGINA R. MCCULLOUGH
Chief, Health Care Fraud Unit
United States Attorney's Office
Eastern District of Michigan

*s/Anthony P. Vance*
Anthony P. Vance
Chief, Branch Offices
United States Attorney's Office
Eastern District of Michigan

*s/Philip A. Ross*
Philip A. Ross
Assistant United States Attorney
Health Care Fraud Unit
United States Attorney's Office
Detroit, Michigan 48226
Phone: (313) 226-9100
Email: Philip.Ross@usdoj.gov

Date: February 15, 2023

| United States District Court<br>Eastern District of Michigan | Criminal Case Co... | Case: 1:23-cr-20099<br>Judge: Ludington, Thomas L.<br>MJ: Morris, Patricia T.<br>Filed: 02-15-2023 At 12:50 PM<br>INDI USA v PATEL (sk) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it a...

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based on LCrR 57.10(b)(4)[1]: | |
| ☐Yes ☒No | **AUSA's Initials:** PR |

**Case Title:** USA v. <u>Sangita Patel, M.D.</u>

**County where offense occurred:** <u>Tuscola</u>

**Offense Type:** Felony

Indictment -- based upon prior complaint [**Case number:** 23-mj-30053]

## Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

**Reason:** 

| **Defendant Name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case**

<u>February 15, 2023</u>
Date

*s/Philip A. Ross*

Philip A. Ross
Assistant United States Attorney
211 W. Fort Street, Ste. 2001
Detroit, MI 48226
Philip.ross@usdoj.gov
(313) 226-9100

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.